UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CR-80183-MARRA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ROGELIO GARCIA,

    Defendant.
_____/

**OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT**

Probation found a total offense level 22, a criminal history category II, and an advisory guideline range of 46-57 months. [PSR ¶ 97]. Mr. Garcia objects to specific offense characteristics assessed for the number of aliens smuggled or harbored [PSR ¶ 36] and the possession of a firearm [PSR ¶ 37] as well as an adjustment for obstruction of justice. [PSR ¶ 41]. He also objects to the denial of a downward adjustment for acceptance of responsibility. [PSR ¶ 44]. If the Court sustains these objections, Mr. Garcia's total offense level would be reduced to 12 and his guideline range would be 12-18 months.

**A. Number of Aliens Smuggled or Harbored**

Because probation determined the total number of aliens smuggled or harbored was eight, it assessed three levels under USSG. § 2L1.1(b)(2)(A). This was incorrect because the government can only establish Mr. Garcia smuggled or harbored five aliens, not eight.

The guidelines provide for a 3-level increase where the number of aliens

smuggled or harbored exceeds six but is less than 24. *See* USSG § 2L1.1(b)(2). Here, the PSR divides Mr. Garcia's offense conduct into two incidents, one on May 4, 2024 and the other on June 18, 2023. During the May 4 incident, Mr. Garcia and his codefendant, Mr. Perez, transported a total of nine passengers from their boat to the dock of a local resort. Law enforcement identified one of those passengers, W.S.C., as an alien without legal documentation to enter or reside in the United States. [PSR ¶ 13]. They also located a backpack containing the identification of a Chinese individual who later applied for asylum and indicated in his application he had entered the United States illegally near Miami. [PSR ¶ 17]. The government never identified any of the other seven passengers on the boat. At best, the government could establish some of them were "from Honduras," [PSR ¶ 16], but that hearsay statement from a non-testifying witness to another non-testifying witness says nothing about the legality of their presence in the United States even assuming it is true. Thus, even including the three aliens found during the June 18 incident, the total number of aliens smuggled or harbored here is five at most and this specific offense characteristic does not apply.

### B. Possession of a Firearm

Probation also assessed three levels under USSG § 2L1.1(b)(5)(C) because "a firearm was possessed." [PSR ¶ 37]. This was incorrect because, while there is evidence a firearm "was present" on the boat during the May 4 incident, there is no evidence to suggest that firearm "was possessed" by anyone involved in this incident.

The law recognizes two different kinds of possession: actual and constructive,

but both require *knowledge* of the object being possessed. *See* Eleventh Circuit Criminal Pattern Jury Instructions, "S6 Possession" (2022) (explaining actual possession requires "*knowingly* ha[ving] direct physical control" of an object and "constructive possession" requires "both the power and intention to take control over" the object later). Here, no witness observed anyone in actual possession of the firearm nor is there evidence any of the individuals on the boat were even aware of the firearm's presence. When law enforcement questioned Mr. Garcia and Mr. Perez about the firearm, they both denied knowledge of its existence. Moreover, with no witness or forensic evidence tying the firearm to anyone on the boat, the government has not charged anyone with its unlawful possession, despite Mr. Garcia's and Mr. Perez's status as convicted felons. Thus, without any evidence anyone on the boat had knowledge the gun was there, the government simply cannot meet its burden of establishing it "was possessed." This enhancement does not apply.

### C. Obstruction of Justice

Probation assessed two levels for "obstruction of justice" under section 3C1.2 because he "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." [PSR ¶ 41]. This was error because there is not a sufficient nexus between the offense of conviction and the reckless endangerment during flight.

Chapter Three adjustments must be based upon acts or omissions: "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that

offense." USSG § 1B1.3. Thus, before applying the two-level increase under section 3C1.2, this Court must find a sufficient nexus between the offense of conviction and the reckless endangerment during flight. *United States v. Dial*, 524 F.3d 783 (6th Cir. 2008); *United States v. Southerland*, 405 F.3d 263 (5th Cir. 2005); *United States v. Gray*, 512 Fed. App'x. 803 (10th Cir. 2013); *United States v. Porter*, 413 Fed. App'x. 526, 531 (3d Cir. 2011); *United States v. Duran*, 37 F.3d 557 (9th Cir. 1994). Here, there is no such nexus because Mr. Garcia's alleged reckless flight occurred some eight months after he committed and was arrested for the offense of conviction and almost a month after he pled guilty to it. There is no evidence he fled during the commission of the offense conviction, in preparation for it, or to avoid detection or responsibility for it. As such, this adjustment does not apply.

### D. Acceptance of Responsibility

Relying on commentary to section 3E1.1, probation denied Mr. Garcia a two-level reduction for acceptance of responsibility because he "has not withdrawn from criminal conduct or associations." [PSR ¶¶ 34, 44]. However, the language of that section is unambiguous – a two-level reduction is warranted where "the defendant clearly demonstrates acceptance of responsibility for his offense." USSG § 3E1.1(a). Mr. Garcia did that when he pled guilty. Nothing in the plain language of that section requires anything more.

And, while the commentary provides a list of considerations for determining whether a reduction is appropriate, the Eleventh Circuit has found the commendatory cannot expand the interpretation of an otherwise unambiguous

sentencing guideline. *United States v. Dupree*, 57 F.4th 1269, 1278 (11th Cir. 2023) (*quoting Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015)(quotation marks omitted). In other words, if the Commission intended the Court consider something more than Mr. Garcia's written [DE 49] and verbal [DE 51] acceptance of responsibility for his offense, it would have said so. Accordingly, this Court should apply the acceptance of responsibility reduction.

    Respectfully submitted,

    MICHAEL CARUSO
    FEDERAL PUBLIC DEFENDER

    *s/Scott Berry*
    Scott Berry, B.C.S.
    Assistant Federal Public Defender
    Attorney for Defendant
    Bar Number: 0525561
    250 South Australian Avenue
    Suite 400
    West Palm Beach, Florida 33401
    Phone: (561) 833-6288
    Fax: (561) 833-0368
    Email: scott_berry@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY certify that on March 14, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                          By: *s/Scott Berry*
                                                Scott Berry